United States District Court
Southern District of Texas

**ENTERED**

August 17, 2021

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION NO. H-15-306 |
| v. | § | |
| | § | CIVIL ACTION NO. H-19-4661 |
| CONSTANCE UMEH-NNADI | § | |

### MEMORANDUM OPINION AND ORDER

Defendant Constance Umeh-Nnadi filed a *pro se* motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255 (Docket Entry No. 69), with a memorandum of law (Docket Entry No. 70). Trial counsel filed an affidavit in compliance with the Court's order (Docket Entry No. 81). The Government filed a response to defendant's motion (Docket Entry No. 89).

Having reviewed the section 2255 motion and memorandum of law, the response, trial counsel's affidavit, the record, and the applicable law, the Court finds that the motion should be set for hearing as to the allegation that defendant's counsel failed to file a notice of appeal after having been instructed to do so. The motion is DENIED in all other respects.

### *Background and Claims*

On September 8, 2015, defendant pleaded guilty pursuant to a written plea agreement to one count of conspiracy to commit healthcare fraud. She expressly waived her rights to pursue a direct appeal or collateral review except as to claims for ineffective assistance of counsel. On November 19, 2018, the Court sentenced her to 96 months' imprisonment and

a three-year term of supervised release. Restitution was ordered in the amount of $3,727,774.00. No direct appeal was taken.

In the instant proceeding, defendant claims that trial counsel was ineffective in (1) failing to inform her of potential sentencing consequences of her guilty plea and the full impact of the sentencing guidelines, and (2) failing to file a direct appeal in her case.

The Government argues that these claims are refuted by the record or otherwise without merit, and that the section 2255 motion should be denied.

### Legal Standards

Generally, there are four grounds upon which a defendant may move to vacate, set aside, or correct his sentence pursuant to section 2255: (1) the imposition of a sentence in violation of the Constitution or the laws of the United States; (2) a lack of jurisdiction of the district court that imposed the sentence; (3) the imposition of a sentence in excess of the maximum authorized by law; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996). Section 2255 is an extraordinary measure, and cannot be used for errors that are not constitutional or jurisdictional if those errors could have been raised on direct appeal. *United States v. Stumpf*, 900 F.2d 842, 845 (5th Cir. 1990). If the error is not of constitutional or jurisdictional magnitude, the movant must show the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

The pleadings of a *pro se* prisoner litigant are reviewed under a less stringent standard than those drafted by an attorney, and are afforded a liberal construction. *Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless, a *pro se* litigant is still required to provide sufficient facts to support his claims, and "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue." *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993). Accordingly, "[a]bsent evidence in the record, a court cannot consider a habeas petitioner's bald assertion on a critical issue in his *pro se* petition . . . to be of probative evidentiary value." *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).

### *Ineffective Assistance of Counsel*

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id*. at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696.

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. To establish prejudice, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

3

proceeding would have been different. A reasonable probability is a probability sufficient

to undermine confidence in the outcome." *Id*. at 694. Reviewing courts must consider the

totality of the evidence before the finder of fact in assessing whether the result would likely

have been different absent counsel's alleged errors. *Id*. at 695–96.

### *Affidavit of Trial Counsel*

In compliance with the Court's order, trial counsel submitted an affidavit responding

to defendant's claims of ineffective assistance. Counsel testified in his affidavit in relevant

part as follows:

> [Defendant's] first allegation is [she] was deprived of her right to effective
> counsel when trial counsel misadvised/failed to advise/act reasonably during
> the plea process which caused her to receive the harshest sentence under the
> guidelines. However, I notified [defendant] very early on in the process what
> was stacked up against her and her likelihood of success before deciding to
> plea [*sic*]. I also spoke with [defendant] about how it might be in our best
> interest to do something quickly after I had seen the amount of discovery and
> what all the Government had to prove this fraud took place on the part of
> [defendant]. Before making this decision we still had multiple consults at my
> office to discuss what she was facing, the federal point system with graphs and
> charts to better explain it, where she fit in that point system, her amount of
> points, and what we could do to reduce the amount of [her] points in order to
> possibly shorten which [*sic*] would still involve a somewhat lengthy sentence.
> [Defendant] speaks English very well however there are times when I can not
> fully understand if she is following everything that I am saying and fully
> comprehending because she is originally from another country and for this
> reason when discussing the possibility of a plea, what would likely be involved
> in a plea, her point distribution, what we would be doing to attempt to lower
> the points, her participation with the Government, and all likely outcomes, I
> had numerous consults where she was present with her pastor and her husband
> to go through the possibilities with her to help her make a decision if this is the
> way she wanted to proceed. We ultimately decided to plea early to get that

point reduction and to cooperate with the Government to ask for an additional point reduction.  All of which [defendant] was advised heavily on.

[Defendant's] second allegation is that I failed to fully explain the various enhancements and how they would impact her sentence. However, I explained the federal sentencing guidelines to [defendant] numerous times in consults and I also have it in her sentencing memorandum. [Defendant] had numerous enhancements attached to her sentencing, partly because it was such a large amount of money that was involved in this fraud, as well as she ran the health care facility along with others and this was all explained to [her]. I notified her that based off of the sentencing table which I gave her a copy of and went over with her in detail, she was at offense level 35 with a criminal history category of 1 since this was her first time being in any trouble but her case was enhanced quite a bit.  I also advised her that with that level being at 35 the guidelines have the sentence being between 168-210 months (14–17.5 years). I also advised her that by participating with the Government we can get a point reduction but it would only do so much but it would significantly reduce the point total in a hope to get you much less time but there will definitely be some significant time that would be spent in the penitentiary.  After these discussions and consults she elected to cooperate with the Government.  She cooperated with the [G]overnment for a significant time and we attended and gave statements to the Government on several occasions during this process. However, it did come to a point that the people she was giving information on decided to go to trial and she didn't want to actively participate in those proceedings and stopped giving the Government information.  It was at this point that the Government elected to pull her active participation and we went forward with sentencing.  Thankfully, this court after a hearing, allowed [defendant] to keep some form of active participation and did not throw the entirety of the level 35 sentence on [her], feeling that would be unjust as she did participate for a significant amount of time and ultimately sentencing her to 96 months (8 years).  This was all discussed with [defendant] before taking the plea, at the time she decided to cooperate, during the cooperation, what could possibly happen if she failed to fully cooperate with the Government throughout the jury trial, and directly before sentencing.

(Docket Entry No. 81, pp. 1–3.)

### *Involuntary Guilty Plea*

Defendant claims that trial counsel was ineffective at the guilty plea phase in two particulars: (1) misadvising and/or failing to advise her "about the most likely consequences she was facing if she accepted the plea," and (2) failing to provide adequate advice as to "how the guidelines are calculated and how stipulated agreement have [*sic*] have an affirmative guideline associated with the stipulated relevant fraud amount." (Docket Entry No. 70, p. 4.) In short, she contends that her plea was unknowing because counsel did not fully explain the correlation between the criminal conduct and the sentencing guidelines. (Docket Entry No. 70, pp. 4–5.)

Under *Strickland*, a defendant must establish both deficient performance and prejudice. To demonstrate prejudice in context of a guilty plea, the defendant must show that there is a reasonable probability that but for counsel's errors, she would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). She "must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 372 (2010). Factors relevant to determining whether a defendant would have gone to trial can include "the risks [she] would have faced at trial," her "representations about [her] desire to retract [her] plea," and "the district court's admonishments." *United States v. Valdez*, 973 F.3d 396, 403 (5th Cir. 2020).

Defendant here does not allege, much less establish, that she would have proceeded to trial but for counsel's alleged deficient performance.  This defect, standing alone, precludes habeas relief on her claims.  *See United States v. Kayode*, 777 F.3d 719, 726 n.4 (5th Cir. 2014) ("This glaring omission in [defendant]'s affidavit alone would likely justify affirmance" of the district court's decision to deny defendant's section 2255 motion.).  Consequently, habeas relief on these claims is not warranted.

Even so, the record and defendant's statements made in the plea agreement and under oath during the guilty plea hearing refute her claims.  A defendant's "solemn declarations in open court carry a strong presumption of verity." *United States v. Palacios*, 928 F.3d 450, 455 (5th Cir. 2019) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). The Fifth Circuit affords "great weight to the defendant's statements at the plea colloquy." *United States v. Cothran*, 302 F.3d 279, 283–84 (5th Cir. 2002).  Defendant testified on the record in open court that she was satisfied with her trial counsel, and that she understood the penalty for her offense was up to ten years in prison and up to a two hundred and fifty thousand-dollar fine. (Docket Entry No. 87, pp. 6, 12.)

Moreover, information regarding relevant conduct, enhancements, and sentencing were discussed both in the written plea agreement and at the plea hearing.  In executing the plea agreement, defendant acknowledged and agreed to the following provisions:

9.      Defendant is aware that her sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that she may have

received from her counsel, the United States  or the Probation Office, is a prediction and not a promise, did not induce her guilty plea, and is not binding on the United States, the Probation Office or the Court.

11(d)   Defendant and the United States agree that the loss related to the conduct described in the Factual Basis of this Plea Agreement (paragraph 16) is approximately $3.7 million.

11(f)   Defendant and the United States agree to recommend to the Court that a two-level enhancement under Section 2B1.1(b)(7) is applicable to Defendant in this case as the loss under Section 2B1.1(b)(7) is greater than $1 million.

11(g)   Defendant and the United States agree to recommend to the Court that a two-level enhancement under Section 2B1.1(b)(10)(C) is applicable to defendant in this case as the offense involved sophisticated means.

11(h)   Defendant and the United States agree to recommend to the Court that a four-level enhancement under Section 3B1.1(a) is applicable to defendant in this case as defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

11(i)   Defendant and the United States agree to recommend to the Court that a two-level enhancement under Section 3B1.3 is applicable because Defendant abused a position of trust.

(Docket Entry No. 27, §§ 9, 11.)  The enhancements were expressly discussed at the plea hearing, and defendant acknowledged her understanding of their possible sentencing impact:

MR. CHANG:       And, Your Honor, I do want to make it clear for the record that the Defendant and the United States as part of the plea agreement has [*sic*] agreed that certain enhancements that are relevant to this case. And they are set forth in the plea agreement.

THE C0URT:       And that's right, Mr. Sherman?

MR. SHERMAN:    That's correct.

MR. CHANG:      It's on page 6.

THE COURT:      Page 6?

MR. CHANG:      Of the plea agreement.

THE COURT:      All right. And you're talking about (f), a two-level enhancement, because the loss was greater than one million dollars?

MR. CHANG:      Right. But then the sophisticated means in (g), leader organizer in (h) and abuse of trust in (i).

THE COURT:      [To defendant]: *Okay. Do you understand that those are possibilities as well?*

THE DEFENDANT:      *Yes, Your Honor.*

(Docket Entry No. 87, p. 19, emphasis added.)

Defendant further confirmed her understanding on the record that she and counsel had discussed how the sentencing guidelines might affect her case, and that a sentence could not be calculated under the guidelines until the PSR was completed. *Id*., p. 20. Defendant acknowledged her understanding in the plea agreement that no sentence had been calculated and that any estimates of a possible sentence were not binding on the parties. (Docket Entry No. 27, §§ 9, 14.) She attested that counsel had full explained, and that she understood, her rights with respect to the United States Sentencing Commission's Guidelines Manual which may apply in her case. *Id*., p. 15 (Plea Agreement Addendum).

Further, trial counsel provided detailed affidavit testimony of the information, explanations, and advice he provided defendant prior to the plea hearing, and the actions he

took on her behalf.  Defendant did not respond to counsel's affidavit or otherwise dispute his

affidavit testimony.

Whether a plea is knowing turns on whether the defendant understood the

consequences of her plea; the defendant must have a full understanding of "what the plea

connotes and of its consequences." *United States v. Hernandez*, 234 F.3d 252, 255 (5th Cir.

2000).  However, a defendant need only understand the direct consequences of the plea, and

need not be made aware of every consequence.  *Id.*  The consequences of a guilty plea, with

respect to sentencing, means that the defendant must know the maximum prison term and the

fine for the charged offense.  *See United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996).

Defendant stated on the record in open court at the plea hearing that she understood

the maximum statutory sentence for her offense, the possible term of supervised release, and

the amount of a possible fine. (Docket Entry No. 87, p. 18.)  She further testified under oath

that she read and understood the written plea agreement, and that she understood her sentence

could not be calculated until filing of the PSR, which would occur after she pleaded guilty.

*Id.*, pp. 20, 24.

Defendant fails to establish deficient performance and prejudice under *Strickland*, and

habeas relief is not warranted.

### *Failure to File Appeal*

Defendant also claims that trial counsel was ineffective in failing to file a notice of

appeal in her case.  She states that she "informed," "advised," or "instructed" him to file an

10

appeal immediately after sentencing, but no appeal was filed. She alleges that, but for

counsel's failure, she would have pursued a direct appeal.  (Docket Entries No. 69, p. 7; No.

70, pp. 6–7.)  In his affidavit, trial counsel states that he was never retained to file an appeal,

he never had a consult with defendant or her family for filing an appeal, and he does not

handle appeals "in any form or fashion."  (Docket Entry No. 81, p. 3.)

In its response to defendant's motion, the Government argues that defendant cannot

show prejudice under *Strickland* as she waived her right to appeal.  The Government's

position contravenes current Supreme Court and Fifth Circuit Court of Appeals precedent.

"[A] lawyer who disregards specific instructions from the defendant to file a notice of appeal

acts in a manner that is professionally unreasonable."  *Roe v. Flores-Ortega*, 528 U.S. 470,

477 (2000).  The Fifth Circuit holds that

> if the petitioner is able to demonstrate by a preponderance of the evidence that
> he requested an appeal, prejudice will be presumed, and the petitioner will be
> entitled to file an out-of-time appeal, regardless of whether he is able to
> identify any arguably meritorious grounds for appeal that would not be
> precluded by the terms of his appeal waiver.

*United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007).  That is, the petitioner need not

show "that his hypothetical appeal might have had merit."  *United States v. Bejarano*, 751

F.3d 280, 285 (5th Cir. 2014).  However, the granting of an out-of-time appeal itself does not

disturb the conviction, sentence, or plea.  If a defendant is granted an out-of-time appeal on

collateral review, applicable waiver provisions in the plea agreement remain enforceable

against the defendant on appeal.  *See*, *e.g.*, *United States v. Griffin*, 839 F. App'x 939 (5th Cir. March 19, 2021) (mem. op.) (enforcing waiver and dismissing appeal).

Defendant pleads a bare minimum of facts necessary to raise a failure-to-appeal claim on collateral review.  Indeed, some district courts in this circuit have denied relief without a hearing under equally conclusory assertions.  *See Herrera-Alvarez v. United States*,  2015 WL 13227805, at *2–3 (S.D. Tex. Aug 10, 2015) (denying an evidentiary hearing because "[a]n allegation, such as Movant's, that states nothing more than 'I told counsel to file an appeal, but counsel failed to do so' or language similar to that, standing alone, is conclusory"), rec. adopted 2015 WL 13217056 (S.D. Tex. Oct. 20, 2015); *Ramos v. United States*, 2014 WL 4784236, at *10–11 (W.D. Tex. July 29, 2014) (finding the defendant's assertion that "he told his attorney he wanted to file a notice of direct appeal," without providing further information, was conclusory), rec. adopted 2014 WL 4783026 (W.D. Tex. Sept. 24, 2014).  *See also Thomas v. United States*, 2021 WL 2690094 (N.D. Tex. June 1, 2021) (denying hearing or relief on conclusory failure-to-appeal claim); *United States v. Vasquez*, 2020 WL 5366112, at *6 (W.D. Tex. Sept. 8, 2020) ("Other than asserting that he directed his attorney to file a notice of appeal, Movant provides no further information. . . Thus, the Court finds he is not entitled to any relief on this claim.").

However, the Fifth Circuit made clear in *Tapp* that where the record in a case does not conclusively show that the petitioner did not request counsel to file an appeal, an evidentiary hearing must be held on a failure-to-appeal habeas claim.  *Tapp*, 491 F.3d 263, 266.  The

Fifth Circuit has since repeatedly reiterated this requirement in numerous unpublished opinions.[1]

In the instant case, the record does not conclusively show that defendant did not ask counsel to file a notice of appeal. Therefore, in light of *Tapp*, an evidentiary hearing is necessary and will be addressed by separate order.

## *Conclusion*

For the above reasons, defendant's section 2255 motion (Docket Entry No. 69) is DENIED except that, by separate order, the Court will order an evidentiary hearing as to defendant's claim that counsel failed to file a notice of appeal as instructed.

The Clerk of Court is ORDERED to terminate the related civil case in this matter, C.A. No. H-19-4661.

Signed at Houston, Texas, on August 17, 2021.

_____
Gray H. Miller
Senior United States District Judge

---

[1]*See, e.g., United States v. Cisneros*, 755 F. App'x 422, 424 (5th Cir. 2019); *United States v. Pena-Garavito*, 539 F. App'x 506, 507 (5th Cir. 2013); *United States v. Higgins*, 459 F. App'x 412, 413 (5th Cir. 2012); *United States v. Harper*, 354 F. App'x 151, 152 (5th Cir. 2009); *United States v. Johnson*, 278 F. App'x 317 (5th Cir. 2008); *United States v. Ramos-Alvarado*, 273 F. App'x 387, 388 (5th Cir. 2008); *United States v. Chavez*, 271 F. App'x 391, 391 (5th Cir. 2008); *United States v. Hereford*, 242 F. App'x 251, 252 (5th Cir. 2007); *United States v. Gardner*, 242 F. App'x 994, 995 (5th Cir. 2007).